IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-3135

_____

TRANSCONTINENTAL GAS
PIPELINE CORPORATION,

                                        Plaintiff-Appellee,

                         versus

TRANSPORTATION INSURANCE
COMPANY,

                                        Intervenor-Appellant,

                         and

LLOYDS, LONDON, and NORTHERN
ASSURANCE COMPANY, LTD., ET AL.,

                                        Defendants-Appellants.

- - - - - - - - - - - - -

Appeals from the United States District Court
for the Middle District of Louisiana

- - - - - - - - - - - - -

On Petition for Rehearing
and Suggestion for Rehearing En Banc

(Opinion February 20, 1992, 5th Cir., 1992, ____ F.2d ____)

(April 3, 1992)

BEFORE REYNALDO G. GARZA, WIENER and BARKSDALE, Circuit Judges.

PER CURIAM :

        The  Plaintiff-Appellee's  Petition  for  Rehearing  is

DENIED; and, as no member of this panel nor Judge in regular active service on this court has requested that the court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the Defendants-Appellants' suggestion for Rehearing En Banc is DENIED.

## I.

Defendants-Appellants, supported by amici curiae, beseech us to withdraw our opinion and certify the issues of this case to the Supreme Court of Louisiana. Certification to State Supreme Courts is a valuable resource of this court, so we dare not abuse it by over use lest we wear out our welcome. As noted in the panel opinion in this case, when we sit in diversity or as an OCSLA court, it is our "duty" to decide the case as would an intermediate appellate court of the state in question if, as here, the highest court of the state has not spoken on the issue or issues presented. Certification is not a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state. Neither is it to be used as a convenient way to duck our responsibility in OCSLA or diversity jurisdiction. Here, Defendants-Appellants asked both the district court and this court to certify, but neither court was inclined to do so. Upon re-examination in light of the entreaties as set forth in the Suggestion for Rehearing En Banc, we remain disinclined to certify in this case.

## II.

Transco, in its Petition for Rehearing, concurs in the panel's determination that in the Louisiana Oil Field Anti-Indemnity Act,[1] the legislature intended to prohibit indemnification if, but only if, the agreement containing the indemfication or waiver subrogation agreements pertains to a well. Transco takes exception, however, with the discussion in our panel opinion to the extent it prescribes a fact intensive analysis in natural gas pipeline cases to determine whether the agreement in question relates to a particular well or wells. Transco asserts that in doing so we depart from the conclusion that the Act applies if the agreement pertains to a well, insisting that we shifted our focus from the agreement to the gas being transported. The thrust of Transco's objection is that if we look only to the agreement--here one for painting a natural gas pipeline--rather than to the nature and origin of the gas being transported in the pipeline to be painted, or its location either in or out of the "oil field,"[2] it would be simple for this or any other court to determine whether the agreement "pertains to a well" or pertains to something else, e.g., the painting of a pipeline. In the same vein, Transco expresses concern that our non-exclusive list of ten factors to be considered in efforts to determine whether or not an agreement is covered by the Act, could lead to confusion.

---

[1]    La. Rev. Stat. Ann. § 9:2780 (West 1991), hereafter the Act.

[2]    Rodrique v. LeGros, 563 So.2d 248, 254 (La. 1990).

Specifically, Transco takes umbrage with our reference to geographical location--this despite the Louisiana Supreme Court's reference in <u>Rodrique v. LeGros</u>,[3] to "oilfields"--and also with those factors which focus on the functional nature and special relationship of facilities (such as pipelines) vis a vis gas wells. Transco also insists that the Act does not have <u>per</u> <u>se</u> application to contracts involving pipelines--a truism clearly recognized in our panel opinion.

Transco, in its efforts to narrow the coverage of the Act, makes the same error of <u>simplicity</u> that its opponents make when they seek to broaden the coverage of the Act by arguing, just as simplistically, that inasmuch as all gas comes from wells any transportation of gas must pertain to wells and therefore any agreement affecting a gas pipeline must be covered. By insisting that we ignore the facts identified in our opinion, Transco would have us put on blinders and inspect the agreement and its object completely out of context. That way, Transco's argument must go, the Act is not applicable here because a pipeline is not a well so that an agreement for painting a pipeline can have nothing to do with exploration, development, production, <u>or transportation</u> of oil, <u>gas</u> or water. Transco's argument, when reduced to its essentials, is proposing that we interpret the Act as containing a <u>per</u> <u>se</u> rule that it cannot be applicable to a pipeline--the converse of its earlier insistence (as acknowledged in our panel

---

[3]      <u>Id.</u> at 254.

4

opinion) that the Act cannot be read as being applicable per se to all pipelines.

The truth lies between the positions of Transco on the one hand the Defendants-Appellants on the other: the Act is neither applicable per se to all pipelines nor inapplicable per se to all pipelines. What Transco appears unwilling to accept is the effect of Subsection C of the Act which defines the meaning of agreement as it pertains to a well for oil, gas or water, etc. While not as broad as contended by Defendants-Appellants, Subsections C's definition is considerably broader than advocated by Transco. The Act defines agreement, as it pertains to a well, to include "any agreement . . . concerning any operations related to . . . transportation of oil, gas or water . . . including but not limited to . . . rendering services in connection with any . . . structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including . . . incidental transportation . . . ."[4]

Thus, from the quoted portion of the Acts' definitional provisions, this court remains satisfied that the methodology described in the panel opinion for this case should not be withdrawn in favor of the simplistic analysis advocated by Transco or the equally simplistic one advocated by Defendants and amici.

_____

[4] La. Rev. Stat. Ann. § 9:2780(C) (West 1991) (Emphasis Added).

And, as we are equally unwilling to withdraw the panel opinion in order to certify the question to the Supreme Court of Louisiana, the panel adheres.